1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    TAUMAOE ("TAMMY") UTOAFILI,        )  Case No. 09-2575 SC
                                        )
8              Plaintiff,               )  ORDER DENYING MOTION TO
                                        )  DISMISS FOR IMPROPER VENUE
9         v.                            )
                                        )
10   TRIDENT SEAFOODS CORPORATION, M/V  )
11   INDEPENDENCE, her engines, tackle, )
     apparel, furniture, and            )
12   appurtenances, and DOES 1 through  )
     10, inclusive,                     )
13                                      )
                                        )
14             Defendants.              )
                                        )
15   ─────────────────────────────────

**United States District Court**
For the Northern District of California

16   I.   **INTRODUCTION**

17        Plaintiff Taumaoe Utoafili ("Plaintiff" or "Utoafili") has

18   brought this suit under general maritime law and the Jones Act, 46

19   U.S.C. § 30104, to recover for personal injuries that she suffered

20   while employed as a seaman.  See Compl., Docket No. 1, ¶¶ 9-25.

21   This Order addresses the supplemental briefs and additional

22   supporting affidavits that were submitted by both parties with

23   regard to the Motion to Dismiss for Improper Venue ("Motion")

24   brought by Plaintiff's former employer, Defendant Trident Seafoods

25   Corporation ("Trident").  Docket No. 1.  Trident argues that

26   Plaintiff cannot pursue her personal injury claims in the Northern

27   District of California because her employment contract with Trident

28   included a forum selection provision that requires all suits

against Trident to take place in King County, Washington.  Id. at 2.

In a previous Order, this Court rejected Plaintiff's argument that a recent series of amendments to the Jones Act was intended to void forum selection clauses in employment contracts for seamen. Docket No. 18 ("Oct. Order"), at 4-12.  However, the Court found that Plaintiff had "outlined a potentially valid basis for finding the forum selection clause unreasonable . . . ."  Id. at 16.  The Court nevertheless declined to deny Defendant's Motion on this basis, because Plaintiff had not submitted sufficient pleadings or affidavits to support her claim that she could not pursue the action if she could not bring suit in the Northern District of California.  Id.  The Court noted that although an evidentiary hearing on this issue would be desirable, considerations of cost weighed against holding such a hearing, and the Court instead invited both parties to more fully address the issue through supplemental briefs and the submission of additional affidavits. Id.  Plaintiff has therefore submitted a Supplemental Opposition, Docket No. 19, and Trident has submitted a Supplemental Response, Docket No. 25.

Having considered all of the papers submitted by both parties, the Court has concluded that enforcement of the forum selection clause in this case would be fundamentally unfair, and would effectively deprive Plaintiff of her day in Court.  The Court therefore DENIES Trident's Motion to Dismiss for Improper Venue.

**II.  DISCUSSION**

The Court has previously set out the factual background and

relevant legal standards in its October Order.  The only question now before the Court is whether enforcement of the forum selection clause would effectively defeat Plaintiff's ability to pursue her claims against Trident.

The Supreme Court has emphasized "that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness," although "the party claiming unfairness should bear a heavy burden of proof."  <u>Carnival Cruise Lines v. Shute</u>, 499 U.S. 585, 592, 595 (1991) (citations and internal quotation marks omitted).  The Ninth Circuit has recognized that a court may decline to "permit a forum selection clause wholly to foreclose an employee's ability to assert a claim if, in an exceptional case, enforcing a forum selection clause will effectively preclude the claimant's day in court."  <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1137 (9th Cir. 2003).  As one court in the Northern District of California has previously recognized, district courts retain narrow discretion to decline to enforce forum selection clauses.  <u>See</u> <u>Walker v. Carnival Cruise Lines</u>, 107 F. Supp. 2d 1135, 1140 (N.D. Cal. 2000).  "[S]ince the Supreme Court first established the judicial presumption favoring the enforcement of forum selection clauses, it has tempered that presumption in light of concerns for justice and fairness."  <u>Id.</u> at 1139.

Plaintiff claims that she would be effectively precluded from litigating this case in Washington for two reasons. Supplemental Opp'n at 2.  First, Plaintiff claims that her medical condition limits her mobility.  <u>Id.</u>  Second, Plaintiff claims that pursuing this action in Washington would be prohibitively expensive

for her because she was treated in northern California and she depends upon the testimony of medical experts that are located in California. Id.

**A.   Hardship Due to Plaintiff's Medical Condition**

According to Plaintiff, she faces physical limitations to her mobility as "a result of [her] cervical injury and the related permanent nerve damage, and as a by-product of her inoperable lumbar injuries . . . ." Supplemental Decl. of Utoafili ¶ 2.[1] She cites her fear of falling, and claims that on "some days . . . she is so weak she cannot leave the house . . . ." Id. ¶ 3. She states that on the one occasion that she has travelled back to Washington since her injury, to visit her family for Thanksgiving in 2008, she suffered "extreme pain," fear of falling, and other difficulties. Id. ¶ 4. She also notes that she has family support in San Francisco that could provide her easy access to the courthouse in the event of a trial, whereas in Washington she would face either long trips from her family's nearest residence, or face the additional expenses and inconvenience of staying in a hotel, where she would fear to stay alone because of her medical condition. Id. ¶ 5.

Plaintiff's account of her physical state provides, at best,

---

[1] Utoafili submitted a declaration in support of her Supplemental Opposition. Docket No. 20. As Trident noted in its Supplemental Response, the declaration is not in compliance with General Order No. 45.X.B, which discusses the requirements for signing documents that are filed by individuals who are not registered with the Court's electronic filing system. Plaintiff's counsel has since refiled the declaration with an attestation that Plaintiff has, in fact, signed this declaration. Docket No. 29. Plaintiff's counsel is instructed to familiarize himself with the local rules before he submits future filings. As Trident was in no way prejudiced by this oversight, the Court OVERRULES Trident's objection to the admissibility of this declaration.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

slim support for her argument against dismissal.  Her declaration
suggests that it would be an inconvenient, unpleasant, and perhaps
painful experience to litigate in Washington.  It does not suggest
that the distant venue would be prohibitive, or even unfair.
Plaintiff's primary physician does not suggest that she would be
unable to attend trial, but only that it would be a "medical
hardship on Ms. Utoafili to travel to Seattle for a prolonged court
case."  Second Supplemental Decl. of Edward Bull III, Ex. A ("Dr.
McCormack Letter").[2]  No additional details are provided.  Any
claim that this hardship would be so severe as to preclude her from
attending the trial, or would amount to fundamental unfairness, is
undermined by the fact that Plaintiff travelled to Seattle of her
own volition one year ago.  Supplemental Decl. of Utoafili ¶ 4.[3]

---

[2] Edward Bull III, counsel for Plaintiff, has submitted a
declaration in support of the Supplemental Opposition.  Docket No.
22.  Trident argues that this was submitted after the deadline set
by this Court for Plaintiff to submit her supplemental brief.
Supplemental Resp. at 3 n.1.  However, Plaintiff explicitly
anticipated this late filing when she timely submitted her
Supplemental Opposition, and explained that her physician had been
travelling and that she was awaiting his letter.  Supplemental
Opp'n at 2.  Defendants also had adequate time to consider the late
submission, since the declaration, which attached the letter from
Plaintiff's physician, was submitted eleven days before Trident's
deadline to respond, and only two days after Plaintiff's deadline.
The Court concludes that this document and the attached letter are
appropriate for consideration.
[3] In addition, Trident has cited to a note scratched by Plaintiff's
former physical therapist after this trip, stating that Plaintiff
was "back from vacation + no falls . . . ."  Supplemental Decl. of
Cecilia Harvey, claims manager for Trident, Docket No. 26, Ex. C
("Physical Therapy Notes") at 8.  That Plaintiff's physical
therapist would consider the fact that Plaintiff had not fallen
during the trip to be a cause for comment suggests that Plaintiff's
fear of injury while travelling should be afforded some
credibility, although it clearly did not deter her from travelling.
    Trident further notes that as of February of 2007, Plaintiff
reported to her physical therapist that she was planning to travel
to Hawaii the following April for her mother's birthday.  See
Supplemental Harvey Decl. Ex. A ("Feb. 20 Initial Evaluation") at

**United States District Court**
For the Northern District of California

Moreover, as Trident points out, Plaintiff has on various occasions travelled long distances within California in order to receive treatment for her conditions.  Plaintiff's physical condition would not, in and of itself, render enforcement of the forum selection provision unfair.

**B.   Hardship Due to Plaintiff's Financial Situation**

Plaintiff's argument based upon her financial situation is much stronger.  Whereas Plaintiff had previously provided only brief descriptions of her financial situation and the costs that she would face in Washington, she has since provided a much fuller picture of her finances and the comparative benefits of litigating in San Francisco.  Since her injury, she has largely been unable to work.  She was "totally disabled" until July of this year. Supplemental Utoafili Decl. ¶ 6.  Her sources of income include Social Security disability benefits, totaling $710 per month, and financial assistance from her mother and sister, up to another $300 per month.  Id. ¶ 7.  She claims that her monthly expenses total just under $1000 per month,[4] so she "typically [has] essentially no money in the bank by the end of each month."  Id. ¶¶ 7-8.  If

2.  The record does not reflect whether Plaintiff actually made this trip.

[4] Defendants contest Plaintiff's figure, and claim that the inclusion of certain items is improper.  Supplemental Resp. at 8-9. For example, they note that the "Medical/Dental" expense may be duplicative of the "Dental Insurance" expense.  Id. at 8. Similarly, Plaintiff claims $25 per month for "Physical Therapy," even though the notes obtained from her physical therapist indicate that she was discharged from MEE Memorial Rehab Services in January of 2009.  See Physical Therapy Notes at 8.  The Court also notes that in Plaintiff's total estimate, she overestimates her expenditures by a total of 63 cents per month, apparently because of a miscalculation.  Utoafili Decl. ¶ 8.  Correcting any of these supposed errors would not substantially improve her financial situation.  Plaintiff claims that she is living near the poverty line and is therefore not flush with cash; the Court finds this claim to be credible.

United States District Court
For the Northern District of California

Plaintiff's averments are interpreted in a favorable light and all inferences drawn in her favor, as they must be absent an evidentiary hearing, Murphy, 362 F.3d at 1138, then Plaintiff can credibly claim that her financial situation makes her extremely sensitive to the economic consequences of dismissal in this venue.

With this in mind, the Court turns to the evidence that Plaintiff has submitted with respect to the price differential between litigation in San Francisco and litigation in Seattle. Plaintiff's counsel estimates that litigation in Seattle would cost between $34,000 and $74,400 more than litigation in San Francisco. Plaintiff bases this on price quotes provided by two of her treating physicians, Dr. McCormack, her physician and surgeon, and Dr. Dell, a neuromuscular consultant who examined Plaintiff roughly three and a half months after her injury.  First Supplemental Bull Decl.[5] ¶ 9. Dr. McCormack has indicated that he charges $5,000 for a half day and $10,000 for a full day of testimony, and he estimates that travel to Seattle would require a day-and-a-half worth of charges.  Dr. McCormack Letter at 1.  Dr. Dell's practice manager indicated that Dr. Dell would charge $6,000 for a half day of testimony, or $10,000 for a full day, including "portal to portal billing, in addition to usual customary travel expenses (transportation, accommodation, and meal stipend)."  First Supplemental Bull Decl. Ex. A ("Dr. Dell Letter") at 1-2. Plaintiff's counsel has estimated that the travel expenses for airfare, ground transportation, a single night in a hotel, and meal expenses would cost roughly $800 (the Court will pare this down to

---

[5] Bull submitted a first supplemental declaration in support of the Supplemental Opposition, concurrently with the Supplemental Opposition.  Docket No. 21.

**United States District Court**
For the Northern District of California

$500 for the sake of argument).  These estimates are reasonable and in line with the Court's own expectations.

Assuming that 1) Dr. Dell can make a trip to Seattle as quickly as Dr. McCormack; 2) the testimony of either doctor will last around half a day; and 3) Dr. McCormack also will charge travel expenses (each are reasonable assumptions, in this Court's experience), the testimony of these two witnesses would cost roughly $11,000 if the trial took place in San Francisco, but this cost would be nearly trebled, at $32,000, if the trial took place in Seattle.  The difference of $21,000 -- a deliberately conservative figure -- is the equivalent of nearly twenty-one months of Plaintiff's income.  Plaintiff's counsel claims that it is likely that the testimony of additional physicians will be necessary.  First Supplemental Bull Decl. ¶ 9.  Given Plaintiff's extremely limited financial means, the Court agrees that she will face fundamental unfairness if the suit is dismissed and she is forced to proceed against Trident in Washington.[6]

Trident cites to Bremen v. Zapata Off-Shore, Co., in which the Supreme Court remanded a suit because the district court had failed to make sufficient findings before declining to enforce a forum selection clause.  407 U.S. 1, 18-19 (1972).  The Court held:

> Indeed, it cannot even be assumed that [the Plaintiff] would be placed to the expense of

---

[6] The Court also notes that two of Plaintiff's other doctors have submitted letters stating that they are not willing to travel to Seattle to testify at all.  First Supplemental Bull Decl. ¶¶ 10; id. Ex. B ("Wahl Letter"); id. Ex. C ("Wachhorst Letter").  Both practice in California, and would therefore be within this Court's subpoena power.  Although the Court would not generally be willing to let the preferences of two possible witnesses govern venue, this consideration does provide another reason why Plaintiff's ability to fairly present her case would be impaired by transfer to Washington.

**United States District Court**
For the Northern District of California

> transporting its witnesses to London. It is not
> unusual for important issues in international
> admiralty cases to be dealt with by deposition.
> Both the District Court and the Court of Appeals
> majority appeared satisfied that [the Defendant]
> could receive a fair hearing in Tampa by using
> deposition testimony of its witnesses from
> distant places, and there is no reason to
> conclude that [the plaintiff] could not use
> deposition testimony to equal advantage if forced
> to litigate in London as it bound itself to do.

Id. 18-19 (1972).

In certain contexts, testimony by deposition or video may present an adequate substitution for in-person testimony. However, this Court concludes that forcing Plaintiff to present her crucial medical evidence via deposition or video would substantially impair her ability to pursue her claim against Trident before a jury. This is a personal injury suit, and should it go to trial, Plaintiff's successful recovery will very likely depend upon the credibility afforded to her medical experts by the jury. Trident will no doubt have competent and persuasive medical expertise at its disposal no matter where this trial takes place. Plaintiff has an extremely strong interest in having her experts available to comment upon, rebut, and respond to Trident's experts. This Court routinely makes decisions regarding the fairness of different modes and formats of testimony. Based upon this Court's experience, the Court expects that Plaintiff's deposition-based evidence would be a poor match for the in-person expert testimony of Trident in a trial before a jury. The Court finds that, in the context of this particular personal injury case, and given Plaintiff's very limited financial means, dismissal would force Plaintiff to litigate on a playing field that is slanted substantially towards Trident.

**United States District Court**
For the Northern District of California

Trident points out that three or four fact witnesses reside in Washington or Alaska, and thus Washington will present a more convenient forum for these witnesses.  Supplemental Resp. at 9. However, the Court is not basing its decision on the convenience of any witnesses, but on Plaintiff's ability to litigate in each respective forum.  Were this a question of mere convenience for the parties and witnesses, the Court believes that Plaintiff would easily prevail based upon her physical disabilities, financial hardship, and dependence upon local expert witnesses.  Trident has not offered any evidence that bringing these fact witnesses to testify in San Francisco would present costs comparable to the expense of bringing Plaintiff's witnesses to testify in Seattle, or that these fact witnesses would refuse to testify in San Francisco.

Trident also argues that, in this day and age, the location of trial has become generally irrelevant to the costs that parties face, and it cites several cases for the proposition that "in the age of electronic filing, a substantial portion of litigation can take place anywhere a party has access to the Internet." Chudner v. Transunion Interactive, Inc., 626 F. Supp. 2d 1084, 1091 (D. Or. 2009) (citing Pratt v. Silversea Cruises, Ltd., No. C 05-0693, 2005 U.S. Dist. LEXIS 14439, *12 (N.D. Cal. July 13, 2005)).  However, Plaintiff has demonstrated that, economically speaking, she is working with slim means and slimmer margins.  She is not making a generalized argument about the relative convenience of two forums, but has instead identified a particularly significant, concrete litigation expense that will treble, at least, upon transfer. While Plaintiff's attorney could likely perform much of the pre-trial work from his Oakland office, Trident cannot contest that the

**United States District Court**
For the Northern District of California

trial itself would (by Plaintiff's standards) be significantly more expensive in Washington.  For Plaintiff, the increase in costs would be prohibitive.  Plaintiff's income limitations and dependence upon local experts put her in a unique position, which present concrete disadvantages that most plaintiffs would not normally face if forced to litigate in a distant venue.

Finally, Trident claims that the letters that Plaintiff has submitted to estimate her expert witness expenses are inadmissible hearsay.  Supplemental Rest. at 8.  However, the Court has discretion to consider these letters, in order to ground an estimate for Plaintiff's litigation expenses.  The expenses that Plaintiff will face in either venue are directly material to the fairness of the forum selection provision that Trident has asked this Court to enforce.  Given that one purpose of the supplemental briefing was to limit costs, signed letters from Plaintiff's physicians were as probative of the issue of estimated expenses as any other method reasonably available.  Finally, this Court is in an excellent position to evaluate the prices stated by these letters, given its frequent involvement in matters related to litigation expenses -- indeed, evaluating such expenses has become the regular business of the courts.  To the extent that these letters can be considered hearsay, they are therefore admissible under the "residual exception" set out in Rule 807 of the Federal Rules of Evidence.

The Court finds that Plaintiff has presented an extreme case that would render enforcement of a forum-selection clause fundamentally unfair.  This finding is based primarily upon Plaintiff's financial situation.  Forcing Plaintiff to litigate in

Washington would render her unable to fairly and effectively pursue her claims against Trident, given the nature of her claim, the evidence required for her to prove it, and the very specific costs that Plaintiff has identified and supported, which Plaintiff would be reasonably expected to incur should the Court dismiss this suit. The Court also notes that there is no reason to conclude that Trident would be burdened by defending itself in this forum.

## III. <u>CONCLUSION</u>

Trident's Motion to Dismiss for Improper Venue is hereby DENIED.  The previously scheduled status conference set for December 4, 2009, remains on calendar.  It will take place at 10:00 a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102.


IT IS SO ORDERED.


Dated:  November 30, 2009

UNITED STATES DISTRICT JUDGE